## HERBERT LAND CO. v. LORENZEN.

(Supreme Court, Appellate Division, Second Department.   June 15, 1906.)

JUDGMENT—DEFAULT—OPENING—CONDITIONS.

 Where counsel for defendant answered "ready" on the call of the calendar, and made the same answer for three consecutive days after the case came on the ready section of the calender, but when trial was reached absented himself from the courtroom, and permitted an inquest to be taken, the default should have been opened only on condition that defendant pay all costs and disbursements of plaintiff after notice of trial and $25 counsel fee, and give an undertaking with sureties for the payment of any judgment that might be recovered.

 [Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, §§ 328, 329.]

Appeal from Special Term, Westchester County.

Action by the Herbert Land Company against Frederick Lorenzen. From an order opening a judgment in favor of plaintiff, it appeals. Modified on certain conditions, and otherwise reversed.

Argued before WOODWARD, JENKS, GAYNOR, and RICH, JJ.

James C. Bushby, for appellant.

GAYNOR, J.   The established calendar rules, printed on the calendars, of the Trial Terms in Westchester county, the same as in Kings and Queens, is as follows:

The day calendar is made up of two sections, one of causes ready for trial, and called the "ready section," and the other of causes which appear on the day calendar for the first time, and which are not to be tried that day, but are called at the opening of court to see if they are ready, and called the "reserve section."   No cause is tried until it gets on the ready section.   All causes on the reserve section which are marked "ready" on the call are passed for the day.   The causes marked "ready" on the reserve section are moved up to the ready section in their order the next day, or as soon thereafter as the ready section can receive them, according to the progress of work on that section, there being a fixed number of causes actually ready for trial put on the ready section day by day.   This insures to every one a day or more to complete preparations for trial, after the cause first appears on the day calendar.   All excuses or motions for postponement have to be made while the cause is on the reserve section.   That is what the reserve section is for, and to take inquests and dismissals, and note settlements, and so on, and get rid of all dead wood.   No excuse is heard except on affidavits, except that engagements of counsel may be handed up in writing without being sworn to.   When a cause is moved up in its turn to the ready section no excuse is heard for delay of it except some special one which has arisen since it was marked "ready" on the reserve section.   In this way there is on every day calendar a list of causes actually ready for trial that day, so that the court cannot be without work, and compelled to adjourn for lack of work; and also a list of causes not to be tried that day, but which are called at the opening of the court for the purpose of ascertaining those ready to be tried, and which will be moved up to

the ready section for next day, or as soon as may be in the progress of work on the ready section.

This cause appeared on the reserve section on December 6th, and was answered "ready" by both sides on the morning call. Next day it was still on the reserve section and was again answered "ready" by both sides on the morning call. Next day, the 8th, it was on the ready section and was again answered "ready" by both sides. It was reached for trial in the afternoon, and the defendant's attorney remained outside and allowed an inquest to be taken. It now appears from the affidavits that he had never got ready at all, and that his answer of ready three days running was an imposition on the court and on the other side for which an attorney might well expect to be called to account. It is such attorneys who break up the calendars daily in our trial courts, if they are permitted to, and cause the courts to adjourn for lack of work. As no one has appeared or submitted a brief for the respondent on this appeal, it is quite apparent he or his attorney attaches no importance to the order opening the default, and has scant respect therefor. They have probably already accomplished the object they had in view in moving to open it.

The said attorney swears in the affidavit upon which he moved to open the judgment, or default, as he calls it, that the cause having been noticed for trial in February, 1904, "nothing further was heard from it until the 8th day of December, 1905 (the inquest day), when it suddenly and unexpectedly to deponent appeared on the day calendar." This was wholly untrue, as already appears from the foregoing statement. Moreover, it was his business to keep watch and know when the cause was about to come on the day calendar in its regular order.

The learned judge before whom the motion was made opened the default without imposing any terms. The practice of opening defaults as a matter of course should not be continued. Such practice has lowered respect for and injured the administration of justice, and is also a wrong to diligent attorneys and litigants who conform to the rules of court, and are entitled to the protection and favor of the court against the opposite kind of attorneys and litigants. The same is true of the opening of defaults without terms, or adequate terms. Nor should willful defaults be easily excused or opened, but only for the protection of litigants from the misconduct of their attorneys, and then only on such terms as protect and reimburse the other side. They are not defaults but abandonments. Suttor v. City of New York, 106 App. Div. 129, 94 N. Y. Supp. 515. The practice of opening so-called defaults on motion before another judge where the trial judge has heard the motion for postponement on affidavits, as the rules require, should also be discontinued. They are not defaults, and such motions are an appeal from one judge to another. The appeal should be to this court from the order of the trial judge denying the motion to postpone.

The order appealed from should be modified by opening the judgment on the defendant paying all costs and disbursements of the plaintiff after notice of trial, and $25 counsel fee for the counsel who was present on December 8th to try the cause; and giving an undertaking of two sureties or of a surety company in the sum of $1,500 for the pay-

ment of any judgment that may be recovered against him; all within five days after service of the order herein; and in default thereof that the order be reversed with costs and disbursements and the motion denied with costs.

JENKS, J., concurs; WOODWARD and RICH, JJ., in result.

ⓞ

ROONEY v. BROGAN CONST. CO.

(Supreme Court, Appellate Division, Second Department.  June 22, 1906.)

1. MASTER AND SERVANT—ASSUMPTION OF RISK—NATURE.
    The rule that an employé assumes the obvious risks of his employment does not rest wholly on his implied agreement, but on an independent act of waiver, evidenced by his continuing in the employment with knowledge of the facts.
    [Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 538–543, 583.]

2. SAME—RELATION OF PARTIES—PARTY ENTITLED TO ASSERT THE DEFENSE OF ASSUMPTION OF RISK.
    An owner of a building in process of construction requested an independent contractor, having nothing to do with the keeping of fires in stoves to prevent the plaster from freezing, to put on one of his men to do the work, and the owner would pay therefor.  Pursuant to the arrangement, the independent contractor directed one of his employés to do the work. His entire time was occupied in doing it, and the owner paid for it.  Held, that the relations between the owner and the employé were such that the owner was entitled to invoke the doctrine of the assumption of risk by the employé.

3. TRIAL—INSTRUCTIONS—WITHDRAWAL OF ISSUES.
    Where, in an action for injuries received by falling down an elevator shaft in a building in process of construction, the evidence showed that plaintiff knew of the existence of the shaft and the absence of barriers, but did not know of the danger incident to crossing the uneven floors in the performance of his work, and the danger of tripping, an instruction directing a verdict against the employé if he had knowledge of the existence of the unguarded shaft was erroneous, because withdrawing from the jury the issue whether he appreciated the danger incurred while walking on the uneven floors.
    [Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, §§ 613–623.]

Appeal from Trial Term, Kings County.