UNION STORES CORPORATION v. HAIGHT.

(Supreme Court, Appellate Division, Second Department. May 1, 1908.)

1. JUDGMENT—DEFAULT—RIGHT TO OPEN.

Plaintiff's attorney agreed to watch the trial calendar for defendant's convenience, and the case, though seventeenth on the ready calendar one day, was reached about noon through preceding cases being passed. The attorney telephoned defendant's attorney to attend the inquest at 2 p. m., but it being impossible for him to reach the courthouse at that time, it was arranged that the inquest should be had, leaving defendant to take steps to open the default; and default was taken. *Held*, that defendant is entitled to have the default opened.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, §§ 265–291.]

2. APPEAL—REVIEW—EXERCISE OF DISCRETION—OPENING DEFAULT.

Though an order of the Special Term of the Supreme Court refusing to open a default was one involving an exercise of discretion, it was the discretion of the Supreme Court, of which the Appellate Division is a manifestation, and the Appellate Division, on defendant's appeal, can open the default.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 3823.]

Gaynor and Rich, JJ., dissenting.

Appeal from Special Term, Kings County.

Action by the Union Stores Corporation against Louis W. Haight. From an order denying defendant's motion to open his default, he appeals. Reversed, and motion granted.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

Charles Haines, for appellant.

H. Louis Jacobson, for respondent.

WOODWARD, J. It appears from the undisputed facts in this case that the defendant had an arrangement with the plaintiff's attorney to keep watch of the calendar, that it might not be necessary for the former to be present at all times with his witnesses; that through an inadvertence the case was at one time marked for inquest, but that the correction was made at once, with the consent of all concerned, so that the case was marked as being ready. It was not reached on the ready calendar, and on the day of the alleged default the case stood No. 17 on the ready calendar, or three from the bottom of the list. With defendant's counsel at White Plains—the case being on the calendar in Brooklyn—the case was reached on Thursday, owing to the fact that for various reasons the earlier cases were passed. This occurred about noon, and plaintiff's attorney telephoned defendant's attorney, and requested him to be on hand at the inquest in Brooklyn at 2 o'clock in the afternoon of that day. It was impossible at that time for defendant's counsel to reach the courthouse in Brooklyn in time for the inquest, even though the trains were on time, and it was accordingly arranged that the inquest should be held, and that the defendant should then take steps for opening the default. Defendant makes no serious objection to the opening of the default on terms, and, while it is true that the order appealed from is one depending upon discretion, it is the discretion of the Supreme Court, of which this Appellate Division is one of the manifestations, and it seems to me that we should not permit this judgment to stand without opportunity for the defendant to try the issues. There was practically a stipulation on the part of the parties that the defendant should have such opportunity, and there being no conduct on the part of the defendant to indicate any disrespect for the rules of the court, or any purpose to interfere with the prompt dispatch of business, there would seem to me to be no reason why this default should not be opened. The language of this court in the case of Herbert Land Co. v. Lorenzen, 113 App. Div. 802, 99 N. Y. Supp. 937, however applicable to the facts in that case or to the general rules which should govern in cases of default, has no relation to the facts as disclosed in the moving papers now before us, and I am unwilling to take the position that a defendant who may have a meritorious defense is to be deprived of an opportunity to present that defense under the circumstances which existed in this case. If there was any dispute between the parties as to what the arrangement was, if there was any apparent disposition on the part of counsel to trifle with the court or to embarrass litigation, it would be different. No such conditions prevail. The respondent does not suggest a single reason why the order should be sustained, except that it is a matter resting in the discretion of the court, and, as to that discretion, this court is entirely competent to exercise it, and it should do so when the substantial ends of justice require such interposition.

Order reversed, with $10 costs and disbursements, and motion granted on payment of one trial fee and all the disbursements up to and including the time of the inquest. JENKS and HOOKER, JJ., concur.

GAYNOR, J. (dissenting). We ought not to overrule the learned judge below, and open this so-called default. In Kings county the day calendar is called in one part of the court, and the judge there sitting has the difficult task of supplying seven parts of court with causes, and keeping them busy, instead of allowing them to go idle and adjourn day after day for lack of work. He can do this only by proceeding on rules and system, and therefore a system of calendar rules was adopted several years ago, and have been followed ever since. The following are the chief rules: 500 or more causes are called on the general calendar once a month or oftener, if necessary, to give warning to the bar and to parties that they are soon to come on the day calendar in their numerical order for trial, and that preparation should be made therefor. A cause is marked "ready" on this general call if either or both sides answer ready; otherwise it is marked "off." In due course the cause comes on the day calendar. It is not tried on the first day it is on the day calendar, but is only called to see if it is ready, and to hear any motion to postpone it. It is on what is called the reserve section of the day calendar. A motion to postpone may only be made on affidavits, and has to be disregarded if not made on affidavits. If not postponed it is marked ready, and the next day, or the next (or in due course, according to the progress of work) it goes to the ready section of the day calendar for that day and is to be tried when there reached. The time for excuses is past when the cause gets from the said reserve section of the day calendar to the ready section of the day calendar unless something new happens meanwhile.

Counsel may not get together and agree that a cause shall be held, or passed for the day. To permit this, as is perfectly obvious, and as experience showed before the calendar rules were adopted, would be to break up the ready day calendar almost daily, and cause the parts of court to adjourn for lack of work, with a general calendar about two years in arrears, which would cause well-founded criticism of the courts, if not scandal. Herbert Land Co. v. Lorenzen, 113 App. Div. 802, 99 N. Y. Supp. 937; Iron Clad Manufacturing Co. v. Steffen, 114 App. Div. 792, 100 N. Y. Supp. 196; Loehr v. Brooklyn Ferry Co., 115 App. Div. 666, 101 N. Y. Supp. 209; Rosenfeld v. Central Vermont R. Co., 116 App. Div. 851, 102 N. Y. Supp. 322.

This being the system of rules, it is only necessary to state the facts as given in the affidavits below on the motion of the defendant to open the so-called default to see that the order denying the motion to open the defendant's so-called default should be affirmed.

The cause having been marked ready on the general call mentioned above, the duty of each side was then to locate the witnesses and get ready. Such call is a warning for that very purpose. The cause came on the day calendar on April 10, 1907. That was the day for any excuse or application to postpone to be made. But none was made. On the contrary, the plaintiff's attorney answered ready for both sides on the call. He did this by arrangement with the defendant's attorney, who asked him to answer ready for both sides. The next day the cause was still on the reserve section of the day calendar, it not yet having passed to the ready section. It was again answered ready in the same way on the call that day, and it was so answered until and including the

following Monday, April 15th. On that day the attorney for the defendant attended personally and answered ready and the plaintiff's attorney answered ready. The defendant's attorney came late, however, and the cause having been marked for inquest in his absence, he had the judge restore it, and answered ready. The cause was then answered ready April 16th, 17th and 18th by both sides. It was reached for trial on the said last mentioned day, and the defendant not appearing an inquest was taken against him.

Two excuses are given by the attorney for the defendant in his affidavit.

First. He says that he had an arrangement all along with the attorney for the plaintiff that "in case he was obliged to take deponent's default that he would not take advantage of it to deponent's prejudice"—whatever this obscure, or rather contradictory sentence may mean. If the meaning which is claimed for the defendant be given it, then we have the attorney for the defendant practicing a deception on the trial judge by answering a cause ready daily, when he had a secret understanding that it was not really to be tried at all if he chose to stay away. If attorneys could be suffered to do this with impunity the trial judge would have no control of his calendar. He would be the helpless victim of such secret agreements by attorneys who would make them and then mislead the trial judge as to the size and regulation of his calendar for the convenience of the bar, by openly and deceitfully answering ready for trial on the daily call. If attorneys may have such a secret agreement, go through the form of a sham default, and then go to the judge at the motion part and have the default opened and put back on the day calendar, the trial judge is ousted of all control of his calendar, and his day calendar can be broken down with impunity. Surely, a calendar judge should not be subjected to such treatment as this, and the judge below who heard the motion to open the so-called default was right in so deciding. It is not for us to thwart the trial judges in trying to conduct their calendars in a systematic and orderly manner, and preventing themselves from being the mere dupes of procrastinating attorneys.

Second. The other excuse given by the defendant's attorney in his said affidavit is still more intolerable, if that were possible. He says that one of his necessary witnesses resided in California and two others in the state of Connecticut, and that it was impossible to get them to the trial; and yet he had answered ready for trial from the beginning, and even on the morning of the day the cause was reached for trial and the inquest taken. · Is a trial judge to be subjected to such treatment as this, and are the rules established for the orderly conduct of business to be ignored with impunity? Are we to uphold those who subject trial judges to such treatment? Moreover, although issue was joined in the cause in 1904, during the more than two years that the plaintiff waited to get his cause reached for trial, the defendant did not have the testimony of his non-resident witness taken. If the judge below had opened the default, the affidavit of the defendant's attorney shows that he could not have gone on with the trial, but that another inquest would ensue.

The affidavit of the plaintiff's attorney shows that when the cause was reached for trial, he asked the trial judge to hold the cause and allow him to communicate with the defendant's attorney. This the trial judge did, but to the communication of the plaintiff's attorney the defendant's attorney answered back "to proceed with the inquest and that he would thereafter take the proper steps to open his default." It is time that attorneys knew that defaults are not opened as matter of course, but that a default is a serious matter (Warth v. Moore Blind Stitcher Co., 125 App. Div. 211, 109 N. Y. Supp. 116), and that trial Judges will be sustained in upholding the rules and the dignity of their courts.

If the facts were as stated in the opinion on which the order is about to be reversed, I should, of course, concur in the reversal. Instead I have stated the facts as they are, in vindication of the learned trial judge who was deceived and imposed on, and of the other learned judge who refused to open the so-called default, if for no other reason. It is very easy for this branch of the court to impair the usefulness by lessening the legitimate authority of the trial judges.

The order should be affirmed.

RICH, J., concurs.