## PHILADELPHIA & READING COAL & IRON CO. v. KEVER.

(Circuit Court of Appeals, Second Circuit. April 22, 1919. On Rehearing April 28, 1919.)

No. 202.

1. PLEADING ⇐⇒111—JUDGMENT ON PLEA IN ABATEMENT TO BE RENDERED IN CONFORMITY TO STATE PRACTICE.

In conformity with Code Civ. Proc. N. Y. § 498, which permits facts in abatement to be pleaded in the answer, together with defenses on the merits, the judgment of a federal court in that state on overruling a plea in abatement, raising an issue of fact as to the jurisdiction of the court over the person of defendant, should be that defendant answer over.

2. PLEADING ⇐⇒339—LEAVE TO WITHDRAW ANSWER AND FILE PLEA IN ABATEMENT IN DISCRETION OF COURT.

If a defendant asks leave to withdraw his appearance and answer, and to file a plea in abatement, having had knowledge of the defect when he answered, the court may or may not grant leave, and should not if it knows that defendant had such knowledge and that the motion is made in bad faith.

3. PLEADING ⇐⇒111—ON OVERRULING PLEA IN ABATEMENT, ERROR TO REFUSE RIGHT OF DEFENDANT TO ANSWER OVER.

After granting leave to a defendant to withdraw its answer and file a plea in abatement for want of jurisdiction over its person, it was error for the court, after overruling the plea, to refuse to permit defendant to answer over on the merits, and to enter judgment absolute on the plea to jurisdiction.

4. CORPORATIONS ⇐⇒665(2)—SERVICE ON DESIGNATED AGENT OF FOREIGN CORPORATION VALID, THOUGH CAUSE OF ACTION AROSE IN OTHER STATE.

Under New York General Corporation Law (Consol. Laws, c. 23), requiring foreign corporations to designate an agent on whom service may be made, service on such agent is good, although the cause of action sued on arose in another state.

Manton, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Action by Katherine Kever, widow of George Kever, against the Philadelphia & Reading Coal & Iron Company. Judgment for plaintiff, and defendant brings error. Reversed.

Certiorari denied 250 U. S. 665, 40 Sup. Ct. 13, 64 L. Ed. ——.

Macklin, Brown & Purdy, of New York City (Pierre M. Brown, of New York City, of counsel), for plaintiff in error.

Baltrus S. Yankaus and Seabury, Massey & Lowe, all of New York City (Albert Massey, of New York City, of counsel), for defendant in error.

Before WARD, HOUGH, and MANTON, Circuit Judges.

WARD, Circuit Judge. This is a writ of error taken by the defendant, a corporation of the state of Pennsylvania, to a judgment for $19,081.04 assessed against it by a jury as upon a default, as damages for the death of George Kever, caused by its negligence, when employed by it in Schuylkill county, Pa., in favor of his widow, the plaintiff, and

his six infant children. A bitter contest was carried on between the parties for three years, the successive steps of which it will not be necessary to consider.

April 14, 1915, the summons issued. May 22, 1916, the trial began, continued for six days, and ended in the disagreement of the jury. The plaintiff having sworn at the trial that her husband was a naturalized citizen, the defendant's attorney telegraphed to the defendant in Pottsville, Schuylkill county, to investigate, and received a reply from its claim agent that Kever had taken out first papers June 7, 1902, but had never been naturalized.

August 22, 1916, on defendant's motion, it was permitted to withdraw its general appearance and answer and file a plea in abatement to the jurisdiction of the court, on the ground that the plaintiff, being an alien, could sue the defendant, an inhabitant of the state of Pennsylvania, only in the District Court of the United States of the district in which it resided, viz. in the Eastern district of Pennsylvania. January 17, 1917, the court overruled the plea; it having been shown that George Kever had been duly naturalized in Schuylkill county, Pa., June 7, 1902, no final papers being required of him under section 2167, Rev. Stat. U. S.

May 4, 1917, an order was entered, on defendant's motion, reinstating the answer which it had been given leave to withdraw and placing the case on the calendar for trial. April 13, 1918, the court entered an order vacating the order of May 4, 1917, and directing judgment absolute in favor of the plaintiff upon the defendant's plea to the jurisdiction, and directing the United States marshal to summon a jury to assess the plaintiff's damages.

The trial judge believed that the defendant's agents in Pennsylvania must have known from the records there that Kever had been naturalized June 7, 1902, and that they misled the defendant's attorney here to whom no bad faith is imputed, on that point. He said:

"It does not seem, therefore, that upon the present call of the calendar the case should be dismissed for lack of prosecution, when the defendant has, through the plaintiff's inability to prosecute, been allowed to present a defense upon the merits, which it had voluntarily abandoned and refused to urge, while the defendant could insist that the plaintiff's decedent was not a citizen. In other words, the defendant refused to accept the jurisdiction of this court so long as ground of objection thereto arose, but, upon realizing the plaintiff's lack of ability to proceed against it, it now accepts the jurisdiction of the court for the sake of asking that the action be dismissed.

"This would certainly work an unjust result, and the defendant has no purely legal right to insist upon the opening of his default and his restoration to a position from which an unjust result would proceed. Upon the circumstances, it must be held that the order reinstating the defendant's answer should be vacated, and the plaintiff given judgment, upon the defendant's plea to jurisdiction, which admitted, in effect, liability, when presented as it was in this case.

"Under these circumstances the plaintiff's application for judgment should now be granted, and a jury called to assess the plaintiff's damage, in order that the amount might be entered in said judgment."

The learned judge seems to have thought that the defendant had an election either to stand on the question of the jurisdiction of its person or to defend on the merits, and that if it insisted on the one position it

waived the other. We shall examine this question presently. Let us consider the foregoing steps in the case in succession.

The order of August 22, 1916, permitting the defendant to withdraw its general appearance and answer and file a plea in abatement, was within the discretion of the court. If, when the motion was made, the defendant knew that the plaintiff was a citizen, the motion should not have been granted. We said on this subject in Lehigh Valley Railroad Co. v. Washko, 231 Fed. 42, 46, 145 C. C. A. 230, 234:

"In the Yensavage Case the majority of the court called attention to the proposition that, when facts appeared which indicated that the plaintiff had improperly brought the action in that District Court, the court might inquire whether the defendant, when it appeared, joined issue, or went to trial, did have knowledge or information sufficient to form a belief that the action was being prosecuted in the wrong court, on which distinct issue plaintiff had the right to be heard if he so desired. Indeed, the court might properly suspend the trial to enable plaintiff to produce witnesses on this issue. This is undoubtedly correct; if defendant with such knowledge or information takes no step to put a stop to the further prosecution of the suit, he must be deemed to have waived his right. Moreover, this distinct issue is one which the judge himself may hear and determine at the trial, as he would on affidavits if it were raised before the trial. It not infrequently happens that plaintiff avers that he is a resident of a particular district, whereupon the defendant on motion shows conclusively by affidavits that the averment is untrue and dismissal follows.

"In the Yensavage opinion, however, there is a phrase which should not be broadly interpreted. It is said that the disposition of the motion to withdraw the general appearance for the cause stated would 'rest in the discretion of the court.' If this be taken as meaning that the trial judge, taking the evidence, exercises his judgment thereon, it is correct; but this court is not to be understood as holding that there is any further 'discretion' to be exercised. If it appears by the proof that at the time defendant appeared and prosecuted its defense on the merits it had neither knowledge nor information sufficient to form a belief that plaintiff's averments of citizenship and residence were untrue, it is asserting a right which it had never waived, and denial by the court of the relief to which that right entitled it would be reversible error."

The order of May 4, 1917, was right, because the only judgment that could have been entered on this plea in abatement was that the defendant should answer over, the common-law judgment of respondeat ouster. Andrews' Stephens on Pleading, § 97. The plea very properly concluded as follows:

"Wherefore defendant prays that said plea be sustained, that this cause of action be dismissed, and, if the same be overruled, the defendant have leave to answer over upon the merits."

The order of April 13, 1918, directing judgment absolute in the plaintiff's favor upon the plea to the jurisdiction, was improper. It was an interlocutory judgment, quod recuperet. No such judgment could be entered on that plea. The defendant was entitled to answer over. Its answer, formerly withdrawn, had been reinstated, and could only be got rid of by motion for judgment on it as frivolous under section 537 of the New York Code of Civil Procedure, or by motion to strike it out as sham under section 538. It was good both in form and substance, and neither frivolous nor sham.

A defendant who pleads on the merits waives his right to file a plea

in abatement; but he does not, by filing a plea in abatement, waive his right to plead on the merits, and he cannot be deprived of this right by the court. Upon incongruities of pleading in this connection Mr. Justice Daniel said in Sheppard v. Graves, 14 How. 505, 510 (14 L. Ed. 518):

"The incongruities in practice, which mark the progress of this case in the court below, are much to be regretted, as having a tendency to confound the proceedings in courts of justice: proceedings calculated to define and distinguish the rights of parties litigant, and to conduct the courts to a correct adjudication upon those rights; proceedings indeed founded upon, and as it were sanctified by, an experience of their usefulness, and even of their necessity. Thus it has ever been received as a canon of pleading that matters which appertain solely to the jurisdiction of a court, or to the disabilities of the suitor, should never be blended with questions which enter essentially into the subject-matter of the controversy, and that all defenses involving inquiries into that subject-matter imply, nay admit, the competency of the parties to institute such inquiries, and the authority of the court to adjudicate upon them. Hence it is that pleas to the jurisdiction or in abatement, are deemed inconsistent with those which appertain to the merits of a cause; they are tried upon different views as to the relations of the parties, and result in different conclusions. A striking illustration of the mischiefs flowing from the departure from the rule just stated is seen in the practice attempted in the case before us. If it could be imagined that the plea to the jurisdiction and the plea to the merits could be regularly committed to the jury at the same time, the verdict might involve the following absurdities: Should the finding be for the plaintiff, the judgment would, as to the defendant, be upon one issue that of respondeat ouster, and upon the other that he pay the debt, as to the justice of which he was commanded to answer over. Should the finding be for the defendant, the judgment upon one issue must be that the debt was not due, and upon the other that the court called upon so to pronounce had no authority over the case. So that in either aspect there must, under this proceeding, be made and determined one issue which is incongruous with and immaterial to the other. A practice thus fraught with confusion and perplexity, and one endangering the rights of suitors, it is exceedingly desirable should be reformed, and we are aware of no standard of reformation and improvement more safe and more convenient than that which is supplied by the time-tested rules of the common law; and by one of those rules, believed to be without an exception, it is ordained that objections to the jurisdiction of the court, or to the competency of the parties, are matters pleadable in abatement only, and that if, after such matters relied on, a defense be interposed in bar and going to the merits of the controversy, the grounds alleged in abatement become thereby immaterial, and are waived."

[2, 3] If a defendant asks the court for leave to withdraw his appearance and answer and file a plea in abatement, having had knowledge of the defect he proposes to plead before he appeared and answered, the court may or may not give leave. If the court knows that he had such knowledge, and that the motion is made in bad faith, it should certainly refuse the leave. Now in this case there was nothing to show any bad faith on defendant's part when the court permitted the general appearance and answer to be withdrawn; but after the trial of the plea in abatement the court did know as much as it ever learned on the subject of the defendant's bad faith. Still there was nothing then that could be done but to permit the defendant to answer over and proceed to trial. It was error to enter the judgment absolute on the defendant's plea to the jurisdiction.

[4] The plaintiff in error has asked us, in case the cause comes back for a new trial, to decide whether the service of process upon the agent

designated by it under the law of the state of New York (general Corporation Law [Consolidated Laws, c. 23] § 16) was good. The contention is that, it being a foreign corporation engaged in interstate commerce, service on the designated agent here is good only in case of suits for causes of action arising in New York, whereas the cause of action sued on arose in Pennsylvania. Judge Learned Hand has decided to the contrary in the District Court for the Southern District in the case of Smolik v. Philadelphia & Reading Ry. Co., 222 Fed. 148, as has the Court of Appeals of the state of New York in Bagdon v. Philadelphia & Reading Ry. Co., 217 N. Y. 432, 111 N. E. 1075, L. R. A. 1916F, 407, Ann. Cas. 1918A, 389. We concur in this conclusion.

The judgment is reversed.

MANTON, Circuit Judge (dissenting). The defendant in error has judgment for $19,081.04 assessed by a jury pursuant to an order entered April 13, 1918, vacating an order of May 4, 1917, which latter order was granted upon motion of the plaintiff in error reinstating the answer which it had previously filed. This answer the plaintiff in error had withdrawn upon its own motion.

The action was commenced on April 14, 1915, and after several dilatory pleas a trial was had on May 22, 1916, when the jury disagreed. The various pleas interposed by the plaintiff in error were as follows:

Its first plea was served as a plea to the jurisdiction on June 15, 1915, which was returned by the defendant in error because it was not served within 20 days after the service of the summons and complaint. This plea was alleged to be an "invasion of the defendant's rights under the Constitution of the United States, particularly section 1 of the Fourteenth Amendment to the Constitution," in compelling the plaintiff in error to respond in suit. This plea was finally considered and overruled.

The plaintiff in error then filed its answer, a plea to the merits, and a trial was had as aforesaid. At this trial, the defendant in error testified that her husband was a citizen; that his naturalization papers were in their home in Pennsylvania. The plaintiff in error, suspicious of the truth of this statement, had its investigators make inquiry at Pottsville, Pa., to find the truth or falsity of this claim. Through mistake, or ignorance, or willful conduct, it was said to have been reported to counsel for the plaintiff in error that the intestate was not a citizen. The plaintiff in error then moved to withdraw its general appearance and filed a plea in abatement of the jurisdiction of the court, on the ground that the intestate, being an alien, could sue inhabitants of Pennsylvania only in the District Court of the United States in the district in which he resided, namely, the Eastern district of Pennsylvania. Upon the trial of this issue, it was shown that the intestate was a naturalized citizen, and had been one since June, 1902. The public records in Pottsville indicated this.

Thereafter, and on May 4th, on motion of the plaintiff in error, the answer was reinstated and the cause placed on the calendar for trial. The case was reached for trial on January 7, 1918. On the call of the calendar, defendant in error moved for judgment against the plaintiff in

error upon the record including the former motions, and asking for a jury to assess the damages. The plaintiff in error moved to dismiss the complaint. The court disposed of this application by stating that, if the defendant in error was not ready or unable to go on with the trial, the plaintiff in error was entitled to a dismissal for lack of prosecution, but not on the merits. Promptly, then, on January 15, 1918, the plaintiff in error moved to dismiss for lack of prosecution. The defendant in error made a counter motion for leave to reargue, on additional facts, the motion made on December 27, 1916, for judgment by default. The defendant in error's theory was that upon the trial of the plea it was demonstrated that the certificate and affidavit upon which the plea to jurisdiction, based upon the alienage of the intestate was made, were false, and that the court was thus imposed upon, and should therefore deny the application previously made to file the plea to the merits upon a reconsideration.

Because of these dilatory tactics and pleas, which were without merit, it appears that the defendant in error, who had expended some $2,000 in cash disbursements for the prosecution of this action, found herself without funds, and, worse still, without witnesses, because of this long delay. The witnesses had scattered about the country, and the defendant in error was no longer in a position to present the case as she did when it was first tried. A widow and six children, who had, at least, made out a prima facie case, were to be deprived of just compensation for the loss of a husband and father, if the motion of the plaintiff in error to dismiss for lack of prosecution prevailed. These conditions were not of the making of the defendant in error, but were due to the course of conduct of the plaintiff in error.

The plaintiff in error was doing business in the state of New York for years prior to the death of the intestate, selling coal and maintaining coal yards in various places in this state. It had an agent designated upon whom service might be made. The law was settled for the guidance of the District Judge when this first plea was interposed, and this, in an action against the same plaintiff in error, in which the same attorneys appeared for it. Smolik v. Phila. & Reading C. & I. Co. (D. C.) 222 Fed. 148.

When the trial took place in May, 1916, the same plea was urged. The Court of Appeals of the state of New York had then decided against the same contentions of this plaintiff in error. Bagdon v. Phila. & Reading C. & I. Co., 217 N. Y. 432, 111 N. E. 1075, L. R. A. 1916F, 407, Ann. Cas. 1918A, 389. The opinions of these two cases were cited with approval in the Supreme Court of the United States (Penn. Co. v. Gold Issue Mining Co., 243 U. S. 93, 37 Sup. Ct. 344, 61 L. Ed. 610). That process served under the circumstances existing in the case at bar is valid has been held uniformly by the courts in litigations in which both the plaintiff in error and its counsel participated. Phila. & Reading C. & I. Co. v. Gilbert, 245 U. S. 162, 38 Sup. Ct. 58, 62 L. Ed. 221; Same v. Saccripante, 247 U. S. 522, 38 Sup. Ct. 583, 62 L. Ed. 1247; Tauza v. Susquehanna C. & I. Co., 220 N. Y. 259, 115 N. E. 915; Pomeroy v. Hocking Valley Ry. Co., 218 N. Y. 530, 113 N. E. 504; Smolik

v. Phila. & Reading C. & I. Co. (D. C.) 222 Fed. 148; Bagdon v. Phila. & Reading C. & I. Co., 217 N. Y. 432, 111 N. E. 1075, L. R. A. 1916F, 407, Ann. Cas. 1918A, 389.

With this wealth of authority against the plaintiff in error, and with a direct repudiation of its contention by the Supreme Court of the United States, it still pressed upon the District Judge these contentions, and now, in this court, seriously asks us to overrule these authorities and say that this foreign corporation, engaged in interstate commerce, which has designated an agent upon whom service might be made, can be sued in New York only if the cause of action arises here, and cannot be sued where the cause of action arises in the state of Pennsylvania. Such a plea could not be interposed in good faith, and should be treated as tantamount to an abandonment of the defense upon the merits. This court said, in Lehigh Valley Coal Co. v. Yensavage, 218 Fed. 547, 550, 134 C. C. A. 275, 278:

> "We do not, therefore, wish to be understood as deciding, where the plaintiff alleges residence in the district in suit, and the defendant traverses the allegation only by denying any information about it, that if, during the proceedings, it appears that the plaintiff cannot prove his allegation, the defendant's general appearance has bound him. All we wish to lay down is that, when once the truth appears, then at least the defendant must choose between his plea in abatement and his plea to the merits. Assuming that it is not bad to couple the two positions before the defendant is informed, there can be no justification in allowing him to proceed thereafter in the alternative."

Where the defendant appears and pleads to the merits, as it did here, it waives any rights to challenge thereafter the jurisdiction of the court on the ground that the suit has been brought in the wrong district. St. Louis & San Francisco R. Co. v. McBride, 141 U. S. 127, 11 Sup. Ct. 982, 35 L. Ed. 659; Western Loan Co. v. Butte & Boston Mining Co., 210 U. S. 368, 28 Sup. Ct. 720, 52 L. Ed. 1101.

Upon the trial in May, 1916, an issue was raised as to the citizenship of the deceased, for the defendant in error testified that she was a citizen, because her husband was. Immediately counsel for the plaintiff in error wired to a representative in Pennsylvania and received a return answer—a telegram from the plaintiff in error to its counsel, showing its knowledge of the intestate's application for citizenship and his admission to citizenship. How could the plaintiff in error thereafter interpose a plea to the jurisdiction of the court because of the alienage of the intestate, in view of this information? Indeed, the plaintiff in error produced an affidavit of one Morgan and a certificate of a prothonotary that there was no record of the naturalization of George Kever at Pottsville. Attempt is made now to escape from the public record upon the claim that the "v" in the word "Kever" looked as if it were an "r." This cannot help the plaintiff in error, for it did not see the certificate until the trial of the plea, and therefore the plea could not have been interposed in reliance thereon. What appeared on the records as to naturalization was sufficient to satisfy section 2167 of the United States Revised Statutes.

In my opinion, this conduct justifies the conclusion that the defense of want of jurisdiction on the question of service was frivolous, and that the plea upon the ground of alienage was sham. The dismissal of

the sham plea left the plaintiff in error in default, since it had voluntarily withdrawn its answer over the objection of the defendant in error. This was an intentional default. It now complains of the failure of the District Judge to dismiss the action for want of prosecution and in refusing to open a default to again permit it to litigate upon the merits.

Judge Chatfield says that, if he had known these facts when he granted the motion reinstating the defendant's answer on May 14, 1917, he would have refused to do so. This order was still within his power, and he had a right to vacate because he became acquainted with these facts subsequently, which, if known at the time, would have prevented him from making it. His ruling, therefore, was a refusal to open a default which the plaintiff in error had intentionally and obstinately suffered. It differs from defaults due to negligence or oversight, which are promptly opened. The plaintiff in error has been obstinate in its position that it cannot be sued in the New York courts by a resident of the state, or in the jurisdiction of the District Court for the Eastern District of New York. It endeavors to support the claim upon the theory that "living is higher and money correspondingly cheaper in New York than in the mining districts of Pennsylvania." Of course, such reasons find no support in the law.

There is no federal statute governing the opening of defaults in actions at law, and the practice under the Conformity Act is governed by the state statute. Wylie v. Lynch, 195 Fed. 386, 115 C. C. A. 288. Defaults, occurring under circumstances as here disclosed, are not opened by the state courts. City of New York v. Smith, 138 N. Y. 676, 34 N. E. 400; Wight v. Bennett, 55 Hun, 610, 8 N. Y. Supp. 808; Herbert Land Co. v. Lorenzen, 113 App. Div. 802, 99 N. Y. Supp. 937; Thorburn v. Gates, 177 App. Div. 474, 164 N. Y. Supp. 307. The withdrawal of the answer by the plaintiff in error justified the entry of a judgment by default after jurisdiction of the court has been acquired. Craighton v. Kerr, 87 U. S. (20 Wall.) 8, 22 L. Ed. 309; The Last Chance Co. v. Tyler Mining Co., 157 U. S. 683, 15 Sup. Ct. 733, 39 L. Ed. 859.

The judgment should be affirmed.

## On Rehearing.

WARD, Circuit Judge. [1] We fell into error, so far as common-law pleading is concerned, in saying in our original opinion that the only judgment that could have been entered on the defendant's plea in abatement was that of respondeat ouster and that therefore the District Judge erred in entering under it a judgment quod recuperet. This would have been so if the defendant's plea had raised an issue of law, but as it raised an issue of fact, viz., that the plaintiff was not a citizen, but an alien, the judgment of quod recuperet was right at common law. The theory is that the defendant, by setting up the defense of personal immunity from suit in the particular court, admitted that it had none other. The weight of authority is to this effect. Haight v. Holley, 3 Wend. (N. Y.) 258; Jewett v. Davies, 6 N. H. 518; Trow v. Messer,

32 N. H. 361; National Accident Society v. Spiro, 78 Fed. 774, 782, 24 C. C. A. 334.

Rev. Stat. U. S. § 914 (Comp. St. § 1537), provides:

"The practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the Circuit and District Courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the state within which such Circuit or District Courts are held, any rule of court to the contrary notwithstanding."

We do not understand that this absolutely restricts the federal courts to all the provisions of the state law as to pleading in civil actions at law. In this circuit and in the federal courts generally it has been the rule, as at common law, that a defense on the merits waives any objection as to jurisdiction over the person of the defendant. It could not as to the general jurisdiction of the court; e. g., so as to maintain a suit between citizens of the same state where general jurisdiction depends upon citizenship. No consent could do so in such case, and the court would be bound sua sponte, the moment that appeared, to dismiss the action under section 5 of the Act of March 3, 1875, c. 137, 18 Stat. 472, which provides (section 37, Judicial Code [Act March 3, 1911, c. 231, 36 Stat. 1098, Comp. St. § 1019]):

"That if in any suit commenced in a Circuit Court or removed from a state court to a Circuit Court of the United States, it shall appear to the satisfaction of said Circuit Court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this act, the said Circuit Court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed as justice may require, and shall make such order as to costs as shall be just. * * *"

This practice is worth maintaining, because it may save the parties the time and labor of preparation for trial on the merits, when the cause is liable to be dismissed without prejudice on the preliminary objection. It does not, however, conform to the system of pleading prescribed by the laws of the state of New York, which permits this objection to be made in the answer, which may also contain defenses on the merits. Code Civ. Proc. N. Y. § 498.

The burden of proving the jurisdictional condition alleged in the complaint that the action is between citizens of different states, or between an alien and a citizen, is upon the plaintiff, if the allegation is denied in the answer. Roberts v. Lewis, 144 U. S. 653, 12 Sup. Ct. 781, 36 L. Ed. 579. But where the issue is proposed by the defendant upon a plea in abatement the burden of proof is upon him. Sheppard v. Graves, 14 How. 505, 14 L. Ed. 518. This was also held as to the jurisdictional condition in respect to the amount in controversy in Hunt v. New York Cotton Exchange, 205 U. S. 322, 333, 27 Sup. Ct. 529, 51 L. Ed. 821.

If the plea is sustained, there will be a judgment dismissing the complaint without prejudice; but there is no case in this circuit deciding

what the judgment shall be if the plea be decided in favor of the plaintiff. At common law, as we have seen, it should be quod recuperet. This, however, does not conform to the law of the state of New York, which permits the objection to be taken in the answer at the same time with defenses upon the merits.

If we follow the common law with respect to the judgment to be entered, a defendant will rarely dare to make the preliminary objection, at the risk of being deprived of his right to defend upon the merits. Therefore we prefer to hold in conformity with the state system of pleading, that the judgment for the plaintiff upon an issue of fact as to the jurisdiction of the court over the defendant's person upon a plea in abatement should be that the defendant answer over.

This leaves our original conclusion unaltered and therefore the judgment is reversed.

MANTON, Circuit Judge, dissents.